UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

UNITED STATES OF AMERICA,

    Plaintiff,

v.                                           Case No. 06-CR-54

EARL T. MORROW,

    Defendant.

**RECOMMENDATION ON MOTIONS TO SUPPRESS**

On March 14, 2006, a federal grand jury sitting in the Eastern District of Wisconsin returned a two court indictment against Earl T. Morrow ("Morrow"). Counts One and Two of the indictment, respectively, charge Morrow with possessing a firearm, and ammunition, after having previously been convicted of a crime punishable by imprisonment for a term exceeding one year, in violation of 18 U.S.C. §§ 922(g)(1) and 924(e)(1). On May 9, 2006, the grand jury returned a superseding indictment against Morrow. Counts One and Two of the superseding indictment are the same as Counts One and Two of the original indictment. Count Three of the superseding indictment charges Morrow with possessing a substance containing marijuana, in violation of 21 U.S.C. § 844. Count Four charges Morrow with conspiring to corruptly persuade witnesses with the intent to cause and induce witnesses to falsely testify and provide false testimony in an official proceeding, in violation of 18 U.S.C. § 1512(b)(2), (j) and (k).

Morrow has filed two motions to suppress evidence. The first is a motion to suppress statements made by Morrow. The second is a motion to suppress evidence obtained as a result of

the execution of a search warrant on property located at 4416 and 4416A North 62nd Street, Milwaukee, Wisconsin. For the reasons which follow, it will be recommended that both motions be denied.

## I. Motion to Suppress Statements

On May 10, 2006, the court conducted an evidentiary hearing on the defendant's motion to suppress statements. Only one witness testified, that being Special Agent John McDonald ("McDonald") of the Bureau of Alcohol, Tobacco & Firearms ("ATF"). Although neither party ordered a copy of the transcript of such hearing, the government has set forth in its brief a summary of the salient facts presented at the hearing. The summary comports with this court's notes. Those facts are as follows.

McDonald testified that he was not the case agent in the Earl Morrow case and that his role was limited to interviewing Morrow and securing his possessions. Indeed, McDonald had no connection with the Morrow investigation and went to interview Morrow in order to assist the Milwaukee branch of the ATF by asking him questions that he had been asked to pose to Morrow. McDonald was accompanied by Special Agent Nu Phan ("Phan"). McDonald first met with Morrow while Morrow was in the custody of the U.S. Marshal in Houston, Texas. When he first saw Morrow, Morrow was engaging in conversation with the Marshals and seemed to be socializing and joking around with the Marshals, even though he was handcuffed.

McDonald advised Morrow of his constitutional rights and Morrow waived them and agreed to talk with McDonald. After McDonald advised Morrow of his rights, Morrow signed a waiver. A copy of that advice of rights form and the waiver signed by Morrow was admitted into evidence as Exhibit No. 1. According to McDonald, Morrow was cooperative, friendly and at no time did

2

Morrow request to speak to an attorney. There were some questions that Morrow did not want to answer and neither McDonald nor Phan made him answer those questions. The entire interview lasted only about 30 minutes.

Morrow asked McDonald to tell him the penalties he was facing and McDonald told him (although it turns out that McDonald mistakenly understated the amount of jail time Morrow faced in convicted). At no time did McDonald threaten Morrow or tell him that he would get more jail time if he did not talk to McDonald. Nor did McDonald promise Morrow anything in return for his talking.

The bottom line is that McDonald's testimony, which was entirely credible, was uncontradicted. And there was nothing during the course of McDonald's testimony which would suggest that the statements given by Morrow to McDonald were not voluntarily given, after being fully advised of his constitutional rights and after waiving such rights. Such being the case, it will be recommended that Morrow's motion to suppress statements be denied.

**II. Motion to Suppress Evidence Obtained Pursuant to Execution of the Search Warrant**

On February 14, 2006, Milwaukee County Court Commissioner Barry C. Slagle signed a search warrant authorizing law enforcement officials to search the upper unit, garage, and basement located at 4416/4416A N. 62nd Street, Milwaukee, Wisconsin, as well as a burgandy/maroon 1992 Buick Lesabre, VIN # 1G4HR53L9NH438886, and the person of Earl T. Morrow. The warrant was issued based on an affidavit sworn out by Special Agent John Adamson of the United States Department of Justice, Bureau of Alcohol, Tobacco, Firearms, and Explosives. Among other things, the affidavit contained information relating to Morrow's previous felony convictions and information from a confidential source ("CS") indicating that Morrow had pointed a gun at her in January of

2006. The warrant identified the pertinent crime as Felon in Possession of a Firearm (Wis. Stat § 941.29(2)(a)) and authorized a search for firearms, ammunition, items associated with firearms, and items tending to establish residency. Law enforcement officials subsequently executed the search warrant and recovered, among other things, a firearm, ammunition, and substances believed to be marijuana.

Morrow argues that the evidence recovered as a result of executing the warrant should be suppressed for two reasons. First, Morrow contends that there did not exist probable cause for the issuance of the search warrant. Second, Morrow argues that the affidavit in support of the search warrant contained deliberate misstatements of fact and/or factual errors attributable to reckless negligence, and the evidence obtained as a result of the search must therefore be suppressed pursuant to *Franks v. Deleware*, 438 U.S. 154 (1978).

**A. Probable Cause for Issuance of the Warrant**

"[P]robable cause is a fluid concept-turning on the assessment of probabilities in particular factual contexts." *Illinois v. Gates*, 462 U.S. 213, 232 (1983). In determining whether probable cause to issue a warrant exists, "[t]he task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Id*. at 238.

"When . . . the affidavit is the only evidence presented to the warrant-issuing magistrate, 'the warrant must stand or fall solely on the contents of the affidavit.'" *United States v. Koerth*, 312 F.3d 862, 866 (7th Cir. 2002) (citing *United States v. Roth*, 391 F.2d 507, 509 (7th Cir.1967)).

4

> The court must examine the totality of the circumstances to determine whether the affidavit on its face established probable cause. Where the affidavit is supported by an informant's tip, the totality-of-the-circumstances inquiry encompasses several factors, including: (1) the extent to which the police have corroborated the informant's statements; (2) the degree to which the informant has acquired knowledge of the events through firsthand observation; (3) the amount of detail provided; and (4) the interval between the date of the events and police officer's application for the search warrant.

*Id*.

Moreover, the probable cause determination of the issuing judicial officer "should be paid great deference by reviewing courts," and should be upheld as long as the judicial officer "had a 'substantial basis for . . . conclud[ing]' that a search would uncover evidence of wrongdoing." *Gates*, 462 U.S. at 236. Stated another way, the issuing judicial officer's decision to issue a warrant "'is to be given considerable weight' and should be overruled only when the supporting affidavit, read as a whole in a realistic and common sense manner, fails to allege specific facts and circumstances to allow the judge to reasonably conclude that the items sought to be seized are associated with the crime and located in the place indicated." *Koerth*, 312 F.3d at 866-67.

Morrow's argument that there existed no probable cause for the issuance of a warrant to search 4416/4416A N. 62nd Street, Milwaukee, Wisconsin, is predicated in part on his contention that the information provided in the affidavit in support of the warrant was stale. This is so, according to Morrow, because the confidential source who supplied much of the information in the affidavit stated that Morrow pointed a gun at her "sometime [during] the first week in January (2006)," (Gov't's Resp., Ex. A, "Aff. for Search Warrant" ["Aff."] at ¶ 12(h)), but the search warrant did not issue until February 14, 2006. According to Morrow, "[p]robable cause that an allegedly

observed firearm remained in place some 30 days after the fact does not exist in the instant case." (Def.'s Br. at 4.)

Age, or "staleness," is one piece of information that a judicial officer must consider when making a probable cause determination. "The age of the information supporting the application for a warrant is a factor that a magistrate should consider. It is, however, only one factor." *United States v. Batchelder*, 824 F.2d 563, 564 (7th Cir. 1987). In other words, the age of the information is one matter that the judicial official must consider in making the overall common-sense determination of whether it is probable that contraband or evidence of a crime will be found in a particular place.

In the case at hand, the affidavit submitted in support of the search warrant contained a fair amount of detail. I will recount only some of the key information. According to the affidavit, on January 26, 2006, Agent Adamson received information from Morrow's parole officer, which information the parole officer had in turn received from an anonymous source. According to the source, Morrow was possibly in possession of a firearm and ammunition at 4416A N. 62nd Street (upper unit), Milwaukee, Wisconsin. 4416A N. 62nd St. was not the address that Morrow had provided the parole officer as his residence. The parole office also related that Morrow is known to drive his mother's burgundy/maroon 1992 Buick Lesabre, bearing Wisconsin license plate "718GRC." (Aff. at ¶ 7.)

Agent Adamson checked Department of Motor Vehicles records and verified that Wisconsin license "718GRC" was assigned to a burgundy/maroon 1992 Buick Lesabre, VIN # 1G4HR53L9NH438886, owned by Mazzie May Martin. (Aff. at ¶ 8.) The agent had previously learned from Morrow's parole agent that Ms. Martin is Morrow's mother.

Agent Adamson checked Morrow's criminal history and learned that Morrow was listed as a felony offender. Adamson then obtained certified copies of judgments of conviction against Morrow in three separate cases. The crimes which the judgments of conviction related to were Possession with Intent to Deliver Controlled Substances-Cocaine Base, Escape-Criminal Arrest, and Robbery. The agent also located records establishing that Morrow had previously been convicted of Possession of Firearm by Felon. The documentation that Agent Adamson obtained disclosed that firearms were involved in at least three of Morrow's previous convictions. (Aff. at ¶¶ 10-11.)

Agent Adamson met with the confidential source ("CS") on February 9, 2006. The CS told him that she had known Morrow for 16-17 years and had dated him from August 2004 until August 2005. The CS told Adamson that sometime in July of 2005, Morrow pointed a gun at her. She also told the agent that Morrow stores the handgun in his bedroom closet, top shelf, at 4416/4416A N. 62nd St., and that Morrow stores ammunition under his bed at the same address. The CS also told the agent that Morrow drives a burgundy/maroon Buick Lesabre registered to his mother. (Aff. ¶ 12(a) and (b).)

The CS moved out of Wisconsin in August of 2005, but previous to that she lived in Milwaukee with her aunt, and also with Morrow at 4416/4416A N. 62nd St. The CS gave a detailed description of 4416/4416A N. 62nd St., including a description of the layout of the upper unit and a description of the ways that the upper unit can be accessed. The CS advised that 4416/4416A N. 62nd St. is a duplex owned by Morrow's cousin, Bettina Mays *nee* Morrow. According to the CS, Mays parks her "goldish" Nissan Altima in the garage associated with the duplex and Morrow parks the Lesabre adjacent to the garage or in the street. (Aff. at ¶ 12(d)-(g).)

7

The CS reported that the last time she saw Morrow was sometime in the first week of January, 2006, at 4416A N. 62nd St., and that at that time she argued with Morrow and he again pointed a gun at her. (Aff. at ¶ 12(h).)

According to the affidavit, the CS stated that she spoke with Morrow on February 8, 2006, and he advised her that he had a plane ticket from Chicago to Houston, Texas, where the CS was living at that time. Morrow gave the CS the confirmation # for his reservation and the CS confirmed on the Southwest Airlines web site that Morrow indeed had a reservation to fly to Houston on February 9, 2006. The CS also told the agent that Morrow worked for Paradigm Cable of Waukesha, Wisconsin. (Aff. at ¶ 12(j) and (k).)

The agent then checked internet records and learned that 4416/4416A N. 62nd St. is listed as being owned by Leon and Bettina L. Mays. WE Energies advised Agent Adamson that 4416A N. 62nd St. has no accounts, but 4416 N. 62nd St. has two accounts, both listed to Bettina L. Mays. The agent also verified by DMV records that a beige Nissan Altima is registered to Bettina Mays or Leon May, of 4416 N. 62nd St. (Aff. at ¶¶ 13-16.)

On February 9, 2006, Agent Adamson and another agent conducted surveillance of 4416/4416A N. 62nd St. Adamson observed Morrow exit the side door of the residence and get picked up by a man in a mini-van. The agent later verified that a phone number printed on the side of the mini-van was for Paradigm Cable and Networking. The agents followed Morrow to an address in Waukesha, and later back to 4416/4416A N. 62nd St., where Morrow was observed getting out of the mini-van and into a maroon/burgundy Buick Lasabre, license plate "718GRC." Morrow then drove away alone in the Lesabre. (Aff. ¶¶ 17, 19.)

Agent Adamson also contacted a representative from Southwest Airlines and learned that Earl Morrow was associated with the confirmation # that the CS had given him. (Aff. at ¶ 18.)

Finally, the agent stated in the affidavit that, based on his training and experience, individuals who own firearms usually store them in their residence or vehicle. Moreover, firearms are normally maintained for long periods of time because they are somewhat expensive, are not easily destroyed, and do not wear out quickly. Finally, the agent stated that, based on his training and experience, individuals usually take their firearms with them when they change residences, whether temporarily or on a permanent basis. (Aff. at ¶¶ 26-28.)

I start by reiterating that my review of Commissioner Slagle's probable cause determination is limited. The Commissioner's determination should be overruled only if Agent Adamson's affidavit, "read as a whole in a realistic and common sense manner, fails to allege specific facts and circumstances to allow the judge to reasonably conclude that the items sought to be seized are associated with the crime and located in the place indicated." *Koerth*, 312 F.3d at 866-67. In my opinion, "given all the circumstances set forth in the affidavit," there was substantial basis from which to conclude that "there [was] a fair probability that contraband or evidence of a crime" would be found at 4416/4416A N. 62nd St. or in the Buick Lesabre. *Gates*, 462 U.S. at 238.

To begin, the affidavit provided ample evidence from which to conclude that Morrow had been previously convicted of a crime punishable by imprisonment for a term exceeding one year. Therefore, there was little doubt that Morrow was prohibited from possessing firearms and ammunition by state and/or federal law. The only question, then, is whether there was sufficient information in the affidavit from which to conclude that evidence that Morrow was in possession of a firearm and ammunition would likely be found at 4416/4416A N. 62nd St.

One piece of information that was before Commissioner Slagle was Morrow's history of firearms possession. As recounted in the affidavit, Morrow's criminal record demonstrates that he has possessed firearms on at least several occasions in the past. Indeed, the affidavit discloses that Morrow has previously been convicted of possessing a firearm after having been convicted of a felony. Of course, Morrow's history of possessing firearms, by itself, did not establish probable cause that he was currently in possession of a firearm. Morrow's history of firearm possession was, however, one piece of information that the Commissioner considered in making the probable cause determination.

The rest of the important information that a firearm and ammunition would likely be found at 4416/4416A N. 62nd St. was supplied by the CS. Most importantly, the CS related that Morrow has pointed a gun at her on two occasions, once in July of 2005, and most recently, during the first week of January, 2006. According to the CS, the January 2006 incident occurred at 4416A N. 62nd St. The CS also reported that she had lived at that address with Morrow during 2004 and 2005, and described in detail where, within the residence, Morrow kept his firearm and ammunition during that time period.

Because much of the information in the affidavit came from the CS, her reliability was important to the probable cause determination. Two considerations in assessing the reliability of the CS's information are (1) the fact that she provided first-hand knowledge, and (2) the fact that, although she remained confidential, she was not anonymous.

The CS's information was of a first-hand nature. She did not tell the agent that she heard that Morrow had a gun; she stated that she had personally seen it and that it had been pointed at her. Moreover, the affidavit contained quite a bit of information tending to confirm that the CS did in fact

10

have personal knowledge of, and contact with, Morrow. The CS was able to tell Agent Adamson what car Morrow drove, whom it was registered to, where Morrow lived, who owned the duplex he lived in, what kind of car that person drove, where Morrow worked, and what Morrow's future travel plans were. The agent then independently corroborated each of these pieces of information.

To be sure, the bits of information that Agent Adamson corroborated were "innocent" details having to do with Morrow's living situation and habits. The agent was not able to corroborate any of the CS's information relating to criminal conduct. However, what the corroboration did do was confirm that the CS knew many details about Morrow's life, knowledge that most likely was derived from personal, first-hand contact with Morrow. This in turn lent credence to the CS's claims that she had first-hand knowledge about Morrow's firearm possession. Simply stated, when a person demonstrates accurate knowledge of many details about a person's living situation, it is more likely that other details are also accurate.

Furthermore, while the CS remained "confidential," she was not an anonymous tipster. The agent who swore out the affidavit had actual contact with her and was able to observe her demeanor. Again, while this alone does not establish the CS's reliability, it was another piece of information before the Commissioner when he made his probable cause determination.

To be sure, none of what I have said so far demonstrates conclusively that the CS was telling the truth about Morrow pointing a gun at her. However, probable cause does not mean certainty. The CS claimed that Morrow had a gun at 4416/4416A N. 62nd St. in January of 2006. The fact that the CS had personal knowledge about many details of Morrow's life, that she was not merely an anonymous tipster but actually came forward, that the information she gave was of a first-hand nature, all coupled with Morrow's history of possessing firearms, was enough to provide a substantial

11

basis for the Commissioner to credit the CS's information and conclude that Morrow probably did have the gun at 4416/4416A N. 62nd St. in January of 2006.

That brings me to the question of staleness. In short, the passage of 30 to 40 days between the time the firearm was seen by the CS, and the issuance of the warrant, was not so long that it could no longer be said that there was a "fair probability" that the firearm would be found at the duplex. If Morrow had a gun at 4416/4416A N. 62nd St. during the first week of January 2006, and as I have already concluded, it was reasonable for Commissioner Slagle to credit the CS's claim that he did, then there was a fair probability that the gun was still there on February 14, 2006. As Agent Adamson stated in his affidavit, guns are the type of thing that people keep for a long time. They are not something that gets consumed over time (like drugs or cash), and they do not wear out or need to be replaced regularly. Indeed, it would not be unusual for a person to own the same gun for decades. *See United States v. Singer*, 943 F.2d 758, 763 (7th Cir. 1991) (holding that no-knock entry was justified despite information that the suspect was involved with guns was six months old because "firearms, unlike drugs, are durable goods useful to their owners for long periods of time"). Moreover, if a person was keeping a gun in their residence in 2005, as the CS reported, and still had it there in January of 2006, then there is a fair probability that the gun will still be there a little more than a month later.

In sum, and for all of the foregoing reasons, I cannot say that the affidavit, when "read as a whole in a realistic and common sense manner, fails to allege specific facts and circumstances" from which Commissioner Slagle could "reasonably conclude" that the firearm and ammunition would be found at 4416/4416A N. 62nd St. or in the Buick Lesabre. *Koerth*, 312 F.3d at 866-67.

12

Case 2:06-cr-00054-LA   Filed 07/11/06   Page 12 of 16   Document 30

## B. Alleged *Franks* Violation

Morrow next argues that the evidence obtained through the execution of the search warrant should be suppressed because Agent Adamson's affidavit "includes statements which amount to reckless disregard for the truth." (Def.'s Br. at 2.) Morrow requested that this court conduct an evidentiary hearing on the matter, a request that this court denied.

In certain circumstances a defendant can challenge a facially sufficient warrant based on the falsity of the affidavit in support of the warrant. However, in order to successfully do so, the defendant must establish that the affidavit contains "deliberate falsehood or . . . reckless disregard for the truth," attributable to the affiant, and that without the false material probable cause would not have existed. *Franks v. Delaware*, 438 U.S. 154, 171-72 (1978). Moreover, before a court must conduct an evidentiary hearing on the matter, the defendant must make allegations, accompanied by an offer of proof, that are "more than conclusory and must be supported by more than a mere desire to cross-examine." *Id*. at 171. Furthermore, to prove reckless disregard for the truth, the defendant must prove that the affiant "in fact entertained serious doubts as to the truth of his allegations," or at least that there existed "circumstances evincing 'obvious reasons to doubt the veracity' of the allegations." *United States v. Williams*, 737 F.2d 594, 602 (7th Cir. 1984) (citation omitted).

Here, the alleged "reckless disregard for the truth" has to do with who purchased Morrow's plane ticket to Houston. Morrow alleges that he did not purchase his plane ticket, but rather, the CS purchased it for him. According to Morrow, this undercuts the CS's reliability. This is so because, according to the affidavit, the CS led Agent Adamson to believe that Morrow had purchased the ticket and then gave the CS the confirmation #, which the CS then checked in order to learn Morrow's travel plans. Furthermore, the CS was purportedly coming forward with information about

13

Morrow because she was afraid of Morrow. Yet, according to Morrow, that the CS actually purchased a ticket for him to come visit her in Houston calls into doubt the CS's alleged fear of Morrow. This in turn calls into question her true motivation for going to the authorities, and ultimately her reliability.

Even assuming for the moment that, had the above information been known, probable cause would not have existed, Morrow's motion to suppress can only be successful if Agent Adamson deliberately included false information in the affidavit, or exhibited reckless disregard for the truth. That is to say, Adamson must at least have "in fact entertained serious doubts as to the truth of his allegations," or there must have existed "circumstances evincing 'obvious reasons to doubt the veracity' of the allegations." However, there is no indication that Adamson entertained any doubt whatsoever that Morrow had himself purchased the plane ticket. Moreover, the only argument that Morrow puts forth to show that Adamson should have doubted that Morrow bought the ticket himself is the fact that further investigation would have revealed that the CS bought the ticket. According to Morrow, Adamson could have found out that the CS bought a plane ticket for Morrow through simple inquiries.

While this may be true, it does not evidence reckless disregard for the truth. There is nothing to suggest that, for example, Adamson harbored suspicions that the CS was lying, but then deliberately chose not to investigate his suspicions. To the contrary, the agent contacted the airline and verified that Morrow was associated with the confirmation # supplied by the CS. It is hard to imagine why, at that point, the agent would have felt the need to more exhaustively investigate the circumstances of the purchase of the ticket. Simply stated, *Franks* does not extend to every situation where an affiant conceivable <u>could</u> have discovered additional information. It only extends to

14

situations where the affiant knew, suspected, or should have suspected that information in the affidavit was false. Under the circumstances at hand, Morrow has not demonstrated that Agent Adamson knew that information in his affidavit was false, nor "in fact entertained serious doubts as to the truth" of the affidavit, nor that there were "obvious reasons to doubt the veracity" of the affidavit. Morrow, therefore, has failed to carry his burden of establishing either deliberate falsehood or reckless disregard for the truth on the part of Agent Adamson.

In conclusion, and for all of the foregoing reasons, it will be recommended that Morrow's motion to suppress evidence obtained pursuant to execution of the warrant be denied.

**NOW THEREFORE IT IS RECOMMENDED** that the defendant's motion to suppress statements be **DENIED**;

**IT IS FURTHER RECOMMENDED** that the defendant's motion to suppress evidence obtained pursuant to the execution of the search warrant be **DENIED**.

Your attention is directed to 28 U.S.C. § 636(b)(1)(B) - (C), Federal Rule of Criminal Procedure 59(b)(2), and General Local Rule 72.3 (E.D. Wis.), whereby written objections to any recommendation herein or part thereof may be filed within ten days of the date of service of this recommendation. Objections are to be filed in accordance with the Eastern District of Wisconsin's electronic case filing procedures. Courtesy paper copies of any objections shall be sent directly to the chambers of the district judge assigned to the case. Failure to object in accordance with the rules cited herein waives your right to review.

**SO ORDERED** this 11th day of July 2006, at Milwaukee, Wisconsin.

                                            /s/ William E. Callahan, Jr.
                                            WILLIAM E. CALLAHAN, JR.
                                            United States Magistrate Judge